Judge Ewing
delivered the Opinion of the Court.
Five several suits were brought by the relator, as the clerk of the County Court of Fayette, against the defendants, upon five different sheriffs’ bonds, to recover from the sheriff and his sureties, the amount of fee bills placed in the hands of the sheriff, in two cases, for collection, and the hands of his deputy, in three other cases.
There seems to be but little diversity in the five cases, and they may be all considered together.
The principal question involved in these cases, arises upon pleas put in by the defendants, presenting, as matter of defence, in bar of the plaintiff’s action, that the fee bills, at the time they were placed in the hands of the officer for collection, were not due and payable two years previous thereto, and that the clerk had not,, at the time of their delivery to the officer, delivered to him a list of the fee bills, endorsed that notes on the Bank of Kentucky or its branches, or notes on the bank of the Commonwealth of Kentucky or its branches, might be received by the officer, in discharge of the same.
These pleas involve a construction of the fifth section of the act passed the 25th of December, 1820, (1 Digest, 500,) which is in the following language:—
“ That no sheriff, constable or other officer, within “ two years after the same shall become due and payable, shall receive from any clerk &c. whose fee bills “ authorize distress, any fee bill for collection, unless such “ officer shall deliver to the officer to whom he delivers “ his fee bills, a duplicate list, with a certificate that notes *559 “ on the bank of Kentucky or its branches, or notes on the “ bank of the Commonwealth of Kentucky or its branches, “ may be received in payment for all the fee bills contained “ in this list. And all the fee bills so endorsed shall be “ discharged in the notes so endorsed, and the officer “ holding the same may distrain for the same, as hereto ‘‘ fore allowed.”
It is contended by one of the counsel for the relator, that if the officer should receive the fee- bills not endorsed as required, he may distrain for them; that there is no prohibitory clause in the act, to prevent it—the act not saying he shall not distrain; and therefore it leaves every remedy in full force for their collection, if received.
We cannot adopt this construction of the section.
It is certainly very carelessly drafted. Nor are the most appropriate words used to express what we are constrained to believe was the intention of the Legislature, in its enactment; and that intention whenever it can be arrived at by any fair construction, should be adopted, without regard to the good or bad policy of the measure.
If we look at the whole statute to which the above section belongs, as well as the evil that existed, and the remedy intended to be effected by its enactment, we cannot doubt the object and intention of the Legislature.
The country had become involved in debt; a great contraction in the circulating medium, had taken place, and a total inability on the part of debtors, to meet their engagements; in consequence of which, a general cry was raised in the community, in favor of legislative relief; and a majority of the members of the Legislature of 1820, had been elected under pledges to afford it.
In the accomplishment of this object, they first chartered the Bank of the Commonwealth of Kentucky, and then passed the act in question, prohibiting the coercion of all debts for two years, which had not previously been replevied, unless the creditor should endorse on the execution, that he was willing to receive, in payment, *560 the notes on the Bank of Kentucky, and Bank of the Commonwealth, and their branches.
Their object and intention was, manifestly, to coerce all creditors to receive the paper of their banks, in payment of their debts or claims; and, in case of their refusal to withdraw from them, for the term of two years, the remedies which the law afforded for their coercion.
While other creditors, who were authorized to pursue their remedies by suit, judgment and execution, were required to endorse their willingness to take the notes of their banks, or branches, on their executions, or be compelled to submit to a replevin of two years, clerks and other officers, who had and would continue to have large demands due them, (especially in those litigious times,) were not passed over by the Legislature.
While the ordinary creditor, who had to resort to the courts of justice to collect his debt, had to make the endorsement on the execution, the clerk and other officers, who had the privilege of collecting their fees by distress, were required to endorse a duplicate list. And while it was the intention of the Legislature to withhold the execution in the one case, except upon the condition imposed, it was equally their intention in the other, to withhold the right of distress, except upon the like terms.
It is true, they have not, in direct terms, prohibited the right of distress in case of a failure to endorse. But they have prohibited all officers who had the right to make distress, from receiving such fee bills for collection, until two years after they became due and payable, unless the required endorsement is made. And in the latter clause of the same section, they have said that when the endorsement shall be made, the officer holding the same “ may distrain for the same, as heretofore allowed.”
A distress being allowed, as heretofore, in cases where the endorsement is made — can it be doubted that the right of distress was intended to be withheld, when the endorsement was not made ?
The act (supra) was not intended to be restricted in its operation, to fee bills that were due at the time it passed: so construed it would be unconstitutional. It is general, applying to all fee bills issued after its passage; and, in that view, is not unconstitutional.
An act of 1796 (Dig 577 § 28,) provides that no suit or justice 3’ warrant, shall be maintained for clerk’s or surveyor’s fees, unless they have been returned nulla bona an act of 180S, (Dig. 578 § 4,) provides that theres hall be no right of distress for fee bills beyond the year in which they became payable, unless they have been sent out for collection, and returned delinquents:-It was contended, that, if the act of 1820 (supra) is construed as prohibiting the sheriffs from collecting fee bills within two years, when he has no authority to take the bank notes, the three acts, taken together, would forever deprive the clerks &.C., of all coercive means of collecting their fees, except in bank notes; and that, therefore, the act of 1820 should not be so construed. If such were its true construction and operation, still the Courts would be bound to give it effect: for it is in the power of the legislature to regulate the fees of officers, prospectively, and to make them payable, absolutely, or conditionally, in bank paper, or any other commodity.-But such is not the true construction. By the act of 1820, the other two acts were modified: their operation upon fee bills not made payable in the bank paper, was suspended for two years—at the expiration of which term, tho fee bills (duo two years before) might be listed for collection, in specie; and the acts of ’96 and 1808 would apply to them as tho’ they were then just due.
Nor can we come to the conclusion, as contended, that this section was intended to apply only to fee bills due and payable at its passage.
The statute is general: no officer shall receive for collection, any fee bill; which applies as well to fee bills then due, as to those that might become due. Litigation was increasing; the debt in fees accumulating, and an evident intention manifested by this, as well as other legislative enactments, to force the paper of certain banks on the community, as a circulating medium, for the payment of all demands.
To accomplish this object, it was as essential t'o make the provisions of the section apply prospectively to the accumulating debt in fees, as retrospectively, or to those only that were then due.
Besides: it is more compatible with the genius of our government, the spirit of our constitution, and the rights of individuals, to give to our statutes that construction which would make them operate prospectively in all cases where it can be done, rather than retrospectively.
The latter construction, in this case, would render the section evidently unconstitutional and void, when the former would bring it perfectly within the competency of legislative enactment. Lapsley vs. Brashears, 4 Littell, 58.
But opposed to this view of the case, our attention has been directed to the twenty eighth section of the act of 1796, (1 Digest, 577,) and to the fourth section of the act of 1808, (1 Dig. 578.)
The twenty eighth section provides, “ that no suit or “ warrant, from a justice of the peace, shall be had or *562 “ maintained for clerks’ or surveyors’ fees, unless the “ sheriff shall return that the person owing or chargeable “ with such fees, hath not sufficient within his bailiwick, “ whereon to make distress, except &c.”
The fourth section provides, “ that the several officers “ shall not have the right of distress for fee bills, beyond “ 'the year in which such fee bills became payable, unless “ such as shall have been actually sent out for collection, and returned as delinquents &c.”
It is contended that, as the twenty eighth section prohibits a warrant for fees, unless put out to be destrained for, and the fourth section prohibits a distress for them beyond the year, unless they have been sent out for collection by distress, within the year, in which they became payable, that the fifth section, if it be construed to prohibit a distress for two years, if not indorsed, would take from clerks all remedy for the collection of their fees by coercion, except in bank paper, and hence such construction should not be given to the fifth section. If such were the consequence, our opinions would not be changed: “ Ita est lex scripta;" we are not placed here to make laws, but to carry into full effect the intention of the Legislature in their enactments.
The Legislature unquestionably possessed the power to increase, reduce, or otherwise regulate the fees of the clerks prospectively. If so, they had the power to require them to be received absolutely and unconditionally, in Commonwealth’s paper, or any other commodity. If so, they surely had the power to withhold all remedy for their collection unless the indorsement which they required should be made.
But we do not regard this as the proper construction to be placed upon those acts when taken together.
And they should be taken together and construed as one act, permiting all the parts and provisions of each to stand, unless there be an irreconcileable repugnance between them; and if that be the case, the former act must give way to the latter, so far as that repugnance exists.
We regard the fifth section as modifying the fourth, and not repealing it. If the fee bills are endorsed, they *563 must be sent out for collection, as required by the fourth section. If they are not endorsed, the time for sending them out is postponed for two years; and in that event, they are to be placed in the officer’s hands for collection, on or before the first day of April next succeeding the expiration of the two years allowed by the fifth section.
An act of 1811. prohibits suits vs. ex ors &c for six months after they qualify; and it was held, that the 6 mo’s should not be included as part of the time which, by previous statutes, bars the actions: and so , the act of 1811 modified the acts of limitation, without repealing them.
The sheriff had no more authority to collect the fee bills, which he was prohibited from receiving—by voluntary payments , than by distress; and if he did receive and collect them by voluntary payments, the proceeding was unofficial & his sureties are not responsible on account of it.
The legislature has power to prescribe and fix the terms and conditions upon which fee bills may be collected, and to-prohibit their collection, unless the terms & conditions are complied with. A statute which prohibits sheriffs from receiving fee bills from clerks for collection, does, in effect, prohibit the clerks from delivering them to the sheriffs for collection ; and if they are delivered and received contrary to the statute, both parties are in pari delicto: a clerk has no right of action upon such unlawful delivery. For—
*563 The two years are to be counted out, and not charged to the default of the officer, in the computation of the-time- preceding that at which his fees are to be put out, by the fourth section; or rather, the day on which they are to be put out, is postponed for two years.
In support of this mode of construing statutes, we have the authority of our predecessors, in a case analagous in principle. Our statute of limitation had prescribed the time which would bar the different species of action. A statute of subsequent date, the statute of 1811, prohibited suits from being brought against executors and administrators until six months after they had qualified. They determined that the six months should be excluded from the computation of the time fixed for the running of the statute. In this they make the provisions of a subsequent act modify the provisions of a previous act, leaving it in other respects in full force.
But it is contended by another of the appellant’s counsel, that though the sheriff might not have the power to coerce the collection of fee bills by distress, that he might receive and collect them by voluntary payments, and for such collections he was officially responsible. The section is clear and unequivocal in its terms, that no sheriff &c. shall receive any fee bill for collection, without the endorsement. His collections by voluntary payment, are as clearly within the inhibition of the section, as his collections by distress. Both being inhibited, both must be unofficial, and for neither, can he or his sureties be made officially responsible.
But it is also contended that, in the two cases in which the fee bills were delivered to the sheriff for collection, he having received them, is estopped to rely upon his own dereliction of duty, to escape responsibility.
If this were the case as to the sheriff, it would cer *564 tainly not hold good as to his sureties. It surely would not be in the power of the sheriff, by his unauthorized, unofficial act, to render his sureties responsible; much less would it be in his power, by doing an act inhibited by a statute, to impose a responsibility upon them.
All contracts against the policy of the law, the provisions of a statute, or the dictates of morality, are void; and that fact may be pleaded in bar of any action upon such a contract.
He cannot by his act make those claims officially collectible, which are not only, not made so by the statute, but expressly inhibited.
But the doctrine of estoppel does not apply to the sheriff, in cases like the present. Such a rule would tend to encourage, rather than suppress, a violation of a prohibitory statute.
The statute was enacted for the public good. The community were interested in its provisions. It was made to protect them from being coerced into the payment of fees to the officers of the Commonwealth, except upon the terms prescribed by the Legislature. They had the power to fix the terms; they have fixed them, in clear and unequivocal words; and taken from the collecting officers, all power to collect, except upon the terms and conditions prescribed. We have not the power to change, alter,, or abolish, those terms, or prescribe others, which may be deemed equivalent. The Legislature had the right to determine upon the policy of the measure, and to select its own mode for carrying it into effect. And having done so, their mode must be pursued.
If the sheriff is prohibited from receiving fee bills for collection, without the endorsement, the clerks are prohibited from delivering them for collection. The one cannot be guilty, and the other innocent; and in actions founded upon such delivery, the maxim applies, in pari delicto, potior est conditio defendentis.
The statute being for the good of the Commonwealth, and the protection and security of its citizens, and the contract, express or implied, upon which the fee bills were delivered for collection, being in derogation of its express provisions, is void, and no action can be sustained upon it. For the doctrine is now well settled, that contracts, express or implied, parol or written, against the policy of the common law, or the provisions of a stat *565 ute, the claims of policy or the dictates of morality, are void; and their nullity may be pleaded in bar of any action founded on such contract. Parsons vs. Thompson, 1 H. Black. 322; Ibid. 327; Walker vs. Perkins, 3 Burrow, 1566; Chitty on Contracts, 229—30—31—32. And the distinction between mala prohibita, and mala in se, seems to be measurably exploded in modern adjudications.
It has been decided, that to make a sheriff liable on his bond, for fee bills collected by him, the relator must show that the fee bills were his, and such as the sheriff was required by law to collect, 2 Bibb. 220; 3 Mon. 394. And that a sheriff is not liable for fines and taxes delivered to his deputy for collection, but which the sheriff was not bound by law to receive. 4 Bibb, 353. And—
In a case upon a sheriff's bond, for his failure to account for fee bills collectible in bank notes only, this court treated the delivery of the bank note certificate required by the statute, as an essential part of the plaintiff's evidence, & reversed the case for a defect of proof on that point. 3 J. J. M. 183
But the principles heretofore settled by this Court, in analaaous cases, when carried out, and applied to this case, will remove all doubt on the subject.
In the case of May vs. Johnson, 2 Bibb, 220, it is decided that to make the sheriff liable for the collection of fee bills, in his official character, the relator must show that the fee bills belonged to him, and that they were such as the sheriff was required by law to collect.
In the case of Edwards’ executors vs. Taylor, 4 Bibb, 355, it was determined, that the sheriff was not bound to account officially for fines and taxes, received by his deputy, for collection, which he was not bound by law to receive.
In the case of Cobb vs. the Commonwealth, for Beaty, 3 Monroe, 394, it was settled, that, in a suit on a sheriff’s bond, it must appear, that the fee bills were due and owing to the relator, and were such as, by the duties of his office, the sheriff was bound to receive and collect.
In the case of Ardery vs. the Commonwealth, for the use of Moore, 3 J. J. Marshall, 183, the clerk had delivered fee bills to the deputy sheriff, for collection, and in a suit on the official bond of his principal, a question of fact arose, whether he had given a certificate authorizing the receipt of bank notes, as required by the statute. The Court recognized the principles settled in the foregoing cases, treat the fact to be proven, as material, and reverse the cause, because it was not made out by competent testimony.
If, as is determined, in the three first cases, the mere absence of obligation to receive and collect, will exempt the sheriff and his sureties from official responsibility, much more will a positive inhibition to receive and collect, exempt them.
The official delinquency which makes a sheriff and his sureties liable, is a failure to do what the law enjoins: not what it does not enjoin; still less what it inhibits.
The pleadings—Action on a sheriff’s bond, for a breach in failing to account for fee bills put into his hands for collection, at a time when he was prohibited from receiving them,unless there was delivered with them a list with a certificate indorsed, that notes on the bank of Kentucky or its branches, or notes on the bank of the Commonwealth or its branches, might be received in payment of all the fee bills, or unless they had been due two years:
Plea that such list and certificate were not delivered, and the fee bills not due two years before &c. Replication, that a list was delivered with a certificate endorsed, that notes on the bank of the Commonwealth of Ken. might be received &c: the replication is bad, for want of an averment as to the notes of the bank of Ken. and its branches. But—
*566 In those three cases, there was no violation of any command, no illegality, the law was merely silent. Here it is imperative, that he shall not receive.
Upon the whole, we conclude, that the sheriff and his sureties are liable only for official defalcations; for failing to do that which the law enjoins, and not for a failure to do that which it does not enjoin, and much less which it inhibits.
To apply the principles above settled, to the five cases under consideration: the declaration in the first case contains three counts. The first count is in the usual form, containing the usual averments, in substance, that fee bills to the amount of $462.68¾ cents, were, on the 7th of April, 18—put into the hands of Wm. R. Morton, the deputy of Young, for collection by said Rodes, the clerk of the County Court of Fayette, and when put into his hands, were due and collectible by distress, and that Young had not, by himself or deputies, well and truly accounted for and paid over the same to said Rodes.
The second count, after averring that the fee bills were placed in the hands of Morton, as deputy of Young, avers, in substance, that Morton had, before the commencement of the suit, and during the continuance of Young as sheriff, collected the amount of the fee bills, and that Young had not, by himself or deputies, paid it over to the clerk: without any averment that the fee bills when placed in the hands of the deputy were due, and collectible by distress.
The third count avers, in substance, that the fee bills were put into the hands of Morton, the deputy, without an endorsement, to collect in gold and silver, and to account for at the time and in the manner directed by law, and which fee bills were then due and payable, and collectible by distress, in notes on the bank of Kentucky or branches, or notes on the bank of the Commonwealth of Kentucky or branches; and said Morton had kept said fee bills in his hands two years, when said fee bills became payable and collectible by distress, in gold or silver, and that the sheriff, by himself or deputies, had failed to account and pay the same to the said Rodes, by the 1st *567 day of October next after they became due and payable in gold and silver.
The replication being demurred to the demurrer must be applied to the first error on the pleadings.
The 1st count(in the action supra) recited in the text, is good.
A count the 2nd) without an averment that the fee bills were collectable by distress, is bad.
If the fee bills were delivered when first due, to be kept by the sheriff two years, and then collected in specie, qu. whether he can be made officially liable for them. If he can, it is clearly necessary to aver that he remained in office—and if the fee bills were delivered to a deputy, that he continued to be the dep. of the same sheriff—until the two years expired, & for such further time as was necessary to make the collections. And, as the presumption is that the sheriff went out of office at the end of two years from his appointment, if he continued in office longer, it must be averred.
Various pleas, demurrers and replications were filed, but we deem it unnecessary to notice more than the 6th and 16th pleas, as the case ultimately turned upon them.
The 6th in substance avers that, when the fee bills were delivered to Morton, Rodes did not deliver to him, a duplicate list of the fee bills, with a certificate endorsed, that notes on the bank of Kentucky or its branches, or notes on the bank of the Commonwealth of Kentucky or its branches, might be received in payment of all the fee bills contained in said list, nor were the fee bills due and payable two years previous to the time, when they were placed in the hands of said Morton.
The 16th plea contains in substance the same averments with the 6th, with this addition, that the fee bills were not due and payable at any time during the continuance of the term of said Young as sheriff of Fayette county.
To which pleas, the plaintiff filed replications, averring that a duplicate list was delivered, endorsed that notes on the bank of the Commonwealth of Kentucky or its branches, might be received &c.
To which replications, demurrers and joinders were filed; and the Circuit Court decided that the demurrers be sustained, adjudging the replications bad, and giving judgment for the defendant.
The replications are evidently bad, in failing to aver that the duplicate list that was delivered, contained the endorsement that notes of the bank of Kentucky or branches, as well as those of the Commonwealth’s bank, might be received.
But it is the duty of the Court to look back into the record and apply the demurrer to the first error committed, if any.
We regard, the first count as good. The second is bad, in failing to aver that the fee bills when collected by the deputy were legally collectible by distress. For if he had no legal authority to collect them, at the time when they were collected, or was then inhibited from *568 collecting them, the sheriff and his sureties are not officially responsible, as above settled.
A dem’r that applies to a whole declaration cannot be sustained if there is any one good count
Good and bad counts: tho’ the plea may apply to all, if it is good for any, it must he sustained.
In an action on a sheriff’s bond, for fee bills collected, one count avers that, when they were placed in the hands of the deputy, they were collectible by distress—an essential averment; the plea avers a state of fact under which they were not, when delivered collectible by distress: the plea is good. If the fee bills became collectible afterwards, while the deputy remained in office, the pl’tf must aver and prove it.
*568 In relation to the third count, we would remark, that if it were competent for the sheriff or his deputies, having received fee bills for collection, without endorsement, to retain them until after the two years expired, when they would become collectible in specie, and if by failing to collect fee bills so retained, or failing to pay over the money collected on them, thus conditioned, the sheriff, could be made officially responsible, (which is not necessary to be settled in this case,) to render him so on his official bond, it would certainly be necessary to aver that he continued in office, and the deputy who received them continued as his deputy, a reasonable time after the expiration of the two years, so as to enable him to make the collections. For as two years is, in the general, by the constitution and laws of the land, the term of the sheriff’s office, we cannot presume that it did continue longer than two years after the date of his bond.
If, therefore, in a particular case, it is protracted to a longer period, it should be specially averred.
The third count is, therefore, bad, in failing to aver, in substance, that Young was sheriff, continuing to act as such, and Morton was his deputy, continuing to act as such, for a reasonable time after the expiration of the two years, when the said fee bills became due and payable and collectible by distress in gold and silver.
But there being one good count, and the demurrer applying to the whole declaration, cannot be sustained for the defect in the two bad counts.
The pleas, though made to apply to the whole declaration, if each of them be responsive, and a good bar to the good count, they should be sustained.
The good count avers that the fee bills were due and collectible by distress when they were placed in the deputy’s hands. Each of the pleas avers a state of facts, which shows that they were not then due and collectible by distress, which meets and presents a sufficient bar to the averment, in the declaration, and are therefore good. If they became due and collectible by distress, at any sub *569 sequent time while the deputy continued in office, it was the duty of the plaintiff to aver and prove it.
Suggestion by the Ch. Jus. of strong doubts whether, if the sheriff was orally directed by the clerk to collect his fee bills in the bank paper, the sheriff ought not to be held officially responsible for what he did collect, tho' the list and bank note endorsement, required by the statute to justify a distress, were not delivered.
The judgment of the Circuit Court is therefore affirmed, with costs.
Similar counts were filed in the other four cases; to which, similar pleas, replications,demurrers and joinders, were put in, and similar judgments of the Circuit Court. For the like reasons, they are all affirmed, with costs.
The Chief Justice—though he does not dissent from the foregoing opinion—feels it his duty to suggest that—as the obvious and only object of the enactment, bearing directly on these cases, was to secure to debtors the privilege of either paying fee bills against them in certain bank paper, or of being entitled to two years indulgence, and as, moreover, the prescribed duplicates could only have been intended for the security of the collecting officers—he cannot feel otherwise than extremely doubtful whether, incongruous and inappropriate as the language of the enactment evidently is—it should not be understood as intending merely that collecting officers should have a right to require duplicates, expressly agreeing to take bank paper, and that, upon fee bills, there should be no distress for any thing but such paper, sooner than at the end of two years; and whether, therefore, if Morton, in these cases, was even orally directed by Rodes to collect the fee bills in paper of the bank of Kentucky or the bank of the Commonwealth, and did actually so collect them, he was not officially responsible to Rodes for what he so collected.